UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:22CV-00007-JHM

JARED STEVEN MASHBURN                                                        PLAINTIFF

V.

HENDERSON COUNTY, *et al.*                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendants Henderson County, Jailer Amy Brady, and Henderson County Detention Center Officers Shumate, McElfresh, Wilburn, and Hunt for Summary Judgment [DN 32, DN 33]. Plaintiff Jared Steven Mashburn filed a cross-motion for summary judgment. [DN 39]. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

Plaintiff Jared Steven Mashburn was incarcerated as a pre-trial detainee at the Henderson County Detention Center ("HCDC"). He filed a *pro se* civil rights action under 42 U.S.C. § 1983 alleging that Henderson County, HCDC Jailer Amy Brady, and HCDC Officers Shumate, McElfresh, and Hunt seized his legal mail while incarcerated at HCDC in violation of the First, Sixth, and Fourteenth Amendments to the United States Constitution. [DN 1]. Mashburn alleges that at the time of his transfer to HCDC on February 24, 2021, Officer Shumate "made copies of the correspondence[,] placed original copies in my property, and then she also placed some of my documents from my attorney in the trash." [DN 1]. Mashburn contends that he did not witness the copies being made and does not know how many copies were made. [*Id.*]. He asserts that the documents were uploaded to the Global Tel Link ("GTL")[1] or "Telmate System" tablet where it is

---

[1] GTL is a company that provides telecommunication and technology services specifically to correctional facilities.

openly accessible to law enforcement. [*Id.*]. In addition to the mail he had when he was transferred to HCDC, Mashburn states that his legal mail was seized, opened, and uploaded by Officers Hunt and McElfresh on ten other dates. [*Id.*]. Mashburn further alleges that Defendant Hunt forged his signature on a mail log on at least one occasion, September 17, 2021. Mashburn contends that HCDC "has a policy that all incoming legal mail is opened by an officer, outside the presence of the inmate, and the inmate never physically sees his incoming legal mail . . . ." [*Id.*].

Relatedly, Mashburn maintains that between February 24, 2021, until September 22, 2022, he was denied access to his legal counsel in violation of the Sixth Amendment and to the courts in violation of the First Amendment because his attorney was required to visit Mashburn regarding his cases through the GTL tablet, "which was located where at least 10-12 other inmates are directly included in the visit with my attorney." [*Id.*]. Mashburn alleges that other inmates, jail staff, and law enforcement could listen to attorney visits at HCDC. [*Id.*]. Additionally, Mashburn asserts that because of the GTL tablet technology, he could not review legal mail scanned into the tablet at the same time he was communicating with his attorney on the tablet because the tablet system was not capable of doing both functions at the same time.

Mashburn also alleges that he was exposed to and tested positive for COVID-19 twice—April 8, 2021, and September 1, 2021—while incarcerated at HCDC. Mashburn contends that Officer Wilburn placed a COVID-19 positive inmate into his cell, "a cell of inmates who were not sick," in violation of the Fourteenth Amendment. [DN 38-1 at 10]. Because social distancing was not possible, all of the inmates in that cell became sick. [*Id.*].

Defendants Henderson County, Brady, Shumate, McElfresh, Wilburn, and Hunt now file this motion for summary judgment. [DN 32, DN 33]. Mashburn filed a cross-motion for summary judgment. [DN 39].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the injury suffered was a direct result of the municipality's official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993)). With the exception of one allegation, Mashburn maintains that the Individual Defendants acted pursuant to Henderson County's mail, communication, and COVID-19 policies.

**A. HCDC Inmate Mail**

Mashburn asserts that Defendants violated his First and Sixth Amendment rights to receive legal mail.

*1. First Amendment*

The First Amendment protects a prisoner's right to receive mail, but prison officials may impose restrictions on the receipt of mail that are reasonably related to security and other legitimate penological objectives. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). This includes opening a prisoner's mail "pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993)). But when the mail is "legal mail," the Court has a heightened concern with allowing prison officials uninhibited access, because a prison's security interests do not automatically supersede a

4

prisoner's First Amendment right to receive correspondence that relates to the prisoner's legal rights, attorney-client privilege, or access to the courts. *Id.* at 874.

In an effort to balance both the security interests of the prison and the First Amendment rights of the inmate, courts have approved prison policies that permit prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539 (1974); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Accordingly, even constitutionally protected mail can be opened—but not read—by prison officials for the purpose of inspecting it for contraband. Such activity must occur in the presence of the recipient inmate. The Federal Bureau of Prisons' policy on legal mail reflects this rule. *See* 28 C.F.R. § 540.12(b); 28 C.F.R. § 540.18(a). Additionally, Kentucky law expressly permits delivery of legal mail to the prisoner via an electronic copy provided on a secure, personal account after being opened and inspected for contraband in the presence of the prisoner. KRS § 441.055(a)(2)(d). *See also Chapman v. Henderson Cnty. Det. Ctr.*, 4:21-CV-00002-JHM, 2022 WL 109211, at *2 (W.D. Ky. Jan. 11, 2022); *Goncalves v. Green*, 0:21-CV-00044-GFVT, 2022 WL 481246, *1 (E.D. Ky. Feb. 16, 2022).

HCDC's policy of inspecting legal mail for contraband in the presence of the prisoner and then scanning the mail onto a secure electronic tablet system to be read only by the inmate does not violate the foregoing law. [DN 33-1, Inmate Mail Policy and Procedure]. Legal mail was previously delivered directly to the inmate, unopened. [DN 41-1]. However, due to an uptick in contraband and other material being smuggled into HCDC through the mail, including in envelopes fraudulently labeled "legal mail," HCDC changed its policy in 2020. [*Id.*; DN 33-1]. Now, HCDC's practice is to open, but not read, an inmate's legal mail in the inmate's presence to confirm it does not contain contraband. [*Id.*]. Afterwards, the envelope's contents are

electronically scanned into that inmate's mail account, which the inmate can access via a password-protected tablet system operated by GTL. [DN 41-1]. The physical mail is then placed in the inmate's property storage. [*Id.*].

The record reflects that he received legal mail on April 17 and September 17, 2021, and February 11, May 13, May 27, June 10, July 15, and July 19, 2022. [DN 33-2, Mail Logs]. The prison inspected Mashburn's legal mail in his presence. They then allowed him access to read it through the electronic system. The Sixth Circuit and the Supreme Court have upheld these policies as constitutional, finding they necessarily account for both the prison's interest in preventing smuggling of illicit substances and the prisoner's First Amendment rights. *See Wolff*, 418 U.S. at 577; *Sallier*, 343 F.3d at 873–77. Although Plaintiff has a First Amendment right to be free from unreasonable censorship of his mail, he has no such right that prevents a prison guard from opening his mail in his presence and examining it to determine if the mail is being used as a vehicle for illegal conduct. *Stanley v Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

Mashburn provides no evidence that HCDC staff read his legal mail at any point, or that they made his legal mail available to anyone other than Mashburn. In fact, he merely alleges that law enforcement could have read it when it was scanned into the system. Furthermore, with respect to Mashburn's argument that Defendant Hunt forged his signature on a mail log on at least one occasion—September 17, 2021, the record reflects that Mashburn was in medical quarantine for COVID-19 at the time and was in a lockdown quarantine cell. [DN 41-1; DN 41-10; DN 33-4]. Further, HCDC's COVID policies prohibit physical interaction between quarantine inmates and staff, including the transfer of mail logs [DN 41-1; DN 33-3 at 6–7], and therefore, Mashburn would have to verbally accept or refuse legal mail. [DN 41-1]. Mashburn does not offer evidence to dispute these facts. Additionally, despite the allegation of forgery, Mashburn does not present

6

any evidence that this piece of legal mail was opened outside of his presence or that it was read by any other individual besides Mashburn. *See* [DN 38-2].

Finally, contrary to Mashburn's argument, *House v. Henderson Cnty. Det. Ctr.*, No. 4:21-CV-00038-JHM, 2022 WL 4279724, at *4 (W.D. Ky. Sept. 15, 2022), does not conflict with the representations by Defendants regarding the privacy of inmate's legal mail or the finding of this Court in the present case. In rejecting the plaintiff's argument in *House* that all investigators, including law enforcement, have access to his legal mail, the Court found that the plaintiff's assertion was not supported by any evidence given that the Telmate tablet's terms of use excludes investigators from the Facility Messages platform, i.e., the scanning of legal mail to inmates. *House*, 2022 WL 4279724, *4.

Accordingly, Mashburn failed to demonstrate a genuine dispute of material fact as to his First Amendment legal mail claim against Henderson County or the Individual Defendants.

        2. *Sixth Amendment*

Summary judgment is also appropriate as to Mashburn's claim under the Sixth Amendment for the deprivation of his right to counsel based on Defendants' alleged interference with his legal mail. Plaintiff has not presented any evidence that Defendants' act of opening his legal mail "created any barrier to [his] relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). In fact, the record shows that Mashburn accepted his legal mail, enabling it to be scanned to his personal tablet account [DN 33-2], and that he was never refused access to his legal mail on the tablet [DN 41-1]. Therefore, summary judgment is proper as to Plaintiff's Sixth Amendment legal mail claim against Henderson County and the Individual Defendants as well.

**B. Denial of Access to Counsel and to the Courts**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "This right includes the right to communicate with one's criminal-defense attorney while confined awaiting trial." *Thompson v. Causey*, No. 1:17-CV-P12-GNS, 2017 WL 1398345, at *2 (W.D. Ky. Apr. 18, 2017) (citing *Maine v. Moulton*, 474 U.S. 159, 170 (1985)). Thus, the Sixth Amendment protects "the attorney-client relationship from intrusion in the criminal setting." *Wolff*, 418 U.S. at 57; *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that the Sixth Amendment right to the assistance of counsel applies only to criminal prosecutions and "extends to the first appeal of right, and no further"). "Access to courts and counsel, however, need not be more than 'reasonable.'" *Woods v. St. Louis Just. Ctr.*, No. 406-CV-233 CAS, 2007 WL 2409753, at *10 (E.D. Mo. Aug. 20, 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 350–351 (1996) (holding that the Constitution does not mandate use of any particular method for providing access to courts or counsel)); *see also Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)). "For example, courts have rejected claims such as being denied telephone use for certain periods of time, so long as the detainee 'had other reasonable means to contact his or her attorney and where no prejudice resulted.'" *Mallory v. Miller*, No. 3:20-CV-P249-RGJ, 2021 WL 964955, at *5 (W.D. Ky. Mar. 15, 2021) (quoting *Stamper v. Campbell Cnty., Ky.*, No. 2007-49 (WOB), 2009 WL 2242410, at *2 (E.D. Ky. July 24, 2009)); *see also Uraz v. Ingham Cnty. Jail*, No. 1:19-CV-550, 2019 WL 4292394, at *9–10 (W.D. Mich. Sept. 11, 2019) ("Plaintiff utterly fails to allege facts demonstrating that he had no other means of communicating with his attorney . . . .").

Mashburn asserts that Defendants violated his right to counsel under the Sixth Amendment because he was denied visitation between he and his counsel while he was incarcerated at HCDC. [DN 38-1 at 2]. Mashburn maintains he was initially denied access to his legal counsel because his attorney was required to visit Mashburn regarding his cases through the GTL tablet, "which

8

was located where at least 10-12 other inmates are directly included in the visit with my attorney." [DN 1; DN 38-1 at 2]. He contends that other inmates, jail staff, and law enforcement could listen to attorney visits at HCDC. [*Id.*]. Mashburn also argues that his attorneys tried to set up visits in "every possible way and were denied each time." [DN 38-1 at 4]. Mashburn further asserts that because of the GTL tablet technology, he could not review legal mail scanned into the tablet at the same time he was communicating with his attorney on the tablet because the tablet system was not capable of doing both functions at the same time. [DN 38-1 at 3]. Mashburn argues that his lack of access to his court papers resulted in a denial of access to his attorneys and to the courts (in violation of the First Amendment). He represents that these violations caused him to suffer "missed deadlines and . . . directly caused denials of motion to suppress [and] motions to challenge indictment" in his criminal case. [DN 38-2, Mashburn Decl. at ¶ 8]. Additionally, he claims that he lost a large amount of money in wasted legal fees and damage to his home because he could not "review settlement agreements" and "ensure the details of the Agreement" were enforced in a civil lawsuit. [*Id.* at ¶ 9].

While Mashburn complains that he was prevented from effectively communicating with counsel because of the location of the GTL tablet, he offers no evidence that he did not have alternate means of communication with counsel. *See Thompson v. Causey*, No. 1:17-CV-P12-GNS, 2017 WL 1398345, at *2 (W.D. Ky. Apr. 18, 2017) (citing *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) ("Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use.") and *White v. Blue*, No. 4:15-CV-P100-JHM, 2015 WL 9244491, at *2 (W.D. Ky. Dec. 17, 2015) (finding that, where plaintiff did not allege that he did not have other means of communicating with his attorney, plaintiff had not alleged any constitutional violation with regard

9

to access to the phone or his attorney)). In fact, the record shows that HCDC inmates have multiple ways to visit and communicate with their counsel including telephone calls, mail, video visitation, and in-person visitation. [DN 41-2, McElfresh Aff.]. Video visitation is available in the inmate's normal cell and, if requested in advance by the attorney, a private meeting cell. Likewise, in-person visitation is available both in the general visitation room and a private meeting cell. [*Id.*]. HCDC's tablet visitation log reflects that Mashburn conducted 59 video visits with his attorney between March 8, 2021, and April 13, 2022. [DN 41-3]. He also conducted four private video visits with his attorney between October 5, 2021, and May 27, 2022. [DN 41-4]. McElfresh's undisputed testimony indicates that defense counsel's office corresponded with Defendant McElfresh numerous times to coordinate the private visitations which were permitted. [DN 41-2].

Given Mashburn's numerous communications with legal counsel while at HCDC, including private video conferences, letters, and telephone calls, the Court finds that reasonable jurors could not differ in finding that neither Henderson County nor the Individual Defendants violated Plaintiff's Sixth Amendment right to access to counsel.

Similarly, Mashburn's First Amendment access to the courts claim fails as well. Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "Where a defendant is represented by counsel in his criminal case, his constitutional right of access to the courts in that proceeding is satisfied as a matter of law." *Jackson v. Stark*, No. 3:19-CV-0005-GFVT, 2019 WL 2178615, at *2 (E.D. Ky. May 17, 2019); *see also Weddle v. Dunbar*, No. 1:15-CV-00009-GNS, 2016 WL 1337296, at *3 (W.D. Ky. Apr. 5, 2016); *Lawson v. Dotson*, No. 3:11CV-P384-H, 2014 WL 186868, at *4 (W.D. Ky. Jan. 15, 2014); *Cooper v. Shelby County Justice Center*, No. 99-6365, 221 F.3d 1334, 2000 WL 924604, at *2 (6th Cir. June 26, 2000) ("[S]ince counsel was appointed to represent Cooper in the pending criminal proceedings, his

access to the court has been protected."); *Wilson v. Porter*, No. 99-1513, 210 F.3d 373, 2000 WL 332060, at *2 (6th Cir. March 22, 2000) (same)). Here, it is undisputed that Mashburn had legal counsel to represent him in his federal criminal case.

With regard to the civil rights lawsuit identified by Mashburn in his motion for summary judgment—*Mashburn v. Hechinger*, No. 1:19-CV-04698 (S.D. Ind.), he has not presented evidence of actual injury or prejudice towards him in that litigation. In order to state a viable claim for interference with access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349, 356 (1996) (advising that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented"); *Talley–Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin–Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). The record in *Mashburn v. Hechinger* demonstrates that litigation continued while Mashburn was incarcerated at HCDC. Significantly, during his incarceration, Mashburn attended a settlement conference via zoom on October 27, 2021, and the case was settled at that time. *Mashburn v. Hechinger*, No. 1:19-CV-04698 (S.D. Ind.), DN 95, DN 100, DN 101. Finally, Mashburn has not articulated how the damages he alleged—failure to enforce the settlement agreement and his home setting without power for a year—are related to a lack of access to the courts.

### C. COVID-19

Mashburn asserts a Fourteenth Amendment deliberate indifference claim against Henderson County and Wilburn. "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate

11

indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted); *Gist v. Trinity Services Group*, No. 3:22-CV-P270-CHB, 2023 WL 2531735, at *4 (W.D. Ky. Mar. 15, 2023). A pretrial detainee must satisfy two elements for a claim based on deliberate indifference to a medical need under the Fourteenth Amendment: (1) he "had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (internal quotation marks omitted)).

COVID-19 is recognized as a sufficiently serious medical need which Defendants do not dispute satisfies the first element. *See Brown v. Clark*, No. 3:22-CV-21-BJB, 2022 WL 3355805, at *2–3 (W.D. Ky. Aug. 12, 2022); *Saunders v. Macauley,* No. 22-1502, 2022 WL 16729580, at *2 (6th Cir. Aug. 10, 2022) (COVID-19 poses a substantial risk of serious harm) (Eighth Amendment claim).

With respect to the second element, Mashburn fails to provide evidence that Wilburn acted recklessly in placing either Mashburn or Billy Sutton into Cell 161 upon his return from a court proceedings. It is undisputed that that on August 13, 2021, Mashburn was transported to Indianapolis, Indiana, for a court date, and upon his return to HCDC, he was placed in a pre-cautionary quarantine cell, Cell 161, with 10 to 12 inmates. [DN 33-5, 8/13/21 Return]. It is also undisputed that on August 19, 2021, Wilburn placed Billy Sutton into Cell 161 upon his return from a court appearance. [DN 41-10]. The record reflects that on August 29, 2021, Sutton tested positive for COVID-19 and Cell 161 was then placed on lockdown quarantine. [DN 41-9]. Plaintiff offers nothing to refute that Sutton did not test positive for COVID-19 until almost 10

days after being placed in Cell 161. While it is unfortunate that Plaintiff contracted COVID-19, Plaintiff has not shown that Wilburn acted deliberately and recklessly in placing Sutton in the cell.

Additionally, the record refutes Mashburn's allegation that the staff failed to test him for COVID-19. The medical records demonstrate that Mashburn was administered at least three COVID-19 test while he was a pretrial detainee at HCDC—when he was transferred to HCDC on February 24, 2021, he tested negative for COVID-19, and again on April 8, 2021, and September 1, 2021, when he tested positive.

Finally, despite Mashburn's assertions to the contrary, the Court finds that no reasonable juror could differ that Henderson County instituted reasonable measures with respect to COVID-19. *See Oneal v. Clark*, No. 3:22-CV-62-BJB, 2022 WL 16747296, at *2 (W.D. Ky. Nov. 7, 2022) (citing *Barnett v. Gastelo*, No. 2:22-cv-4070-RGK, 2022 WL 4292344, at *5 (C.D. Cal. Aug. 22, 2022) (prison's "inability to follow all applicable" Covid precautions "does not show . . . deliberate indifference so long as [the prison] staff instituted reasonable measures"). The record reflects that HCDC implemented numerous policies and procedures to mitigate the risk of COVID-19. [DN 33-3]. Mashburn has not identified any specific policy or practice by Henderson County that was deliberately indifferent to Mashburn's medical needs, including HCDC's policies with respect to COVID-19.

For these reasons, Henderson County and Wilburn are entitled to summary judgment in their favor of this claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 32, DN 33] is **GRANTED**. Plaintiff's Motion for Summary Judgment [DN 39] is **DENIED**. Judgment will be entered consistent with the Opinion.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of Record

March 23, 2023